THOMAS W. DUPREE, Executor of JAMES B. EDDINS, deceased, *et al.*, plaintiffs in error, *vs.* JAMES H. PRICE, defendant in error.

When the Judge below refuses a new trial because he was satisfied with the legality of the verdict, if not its correctness, this Court should not interfere, because it suspects strongly that the verdict was wrong.

Complaint. Motion for new trial. Decided by Judge UNDERWOOD. Polk Superior Court. July Term, 1867.

James H. Price, as endorsee, brought complaint against Benjamin F. Bigelow, as acceptor, Thomas W. Dupree, Executor of James B. Eddins, deceased, as drawer, and Sidney A. White as endorser on the following instrument:

"POLK COUNTY, GA., 2d June, 1857.

"MR. B. F. BIGELOW:

"Please settle five hundred dollars with Mr. Sidney White for me, and this shall be your receipt for the same.

"Yours respectfully,

"J. B. EDDINS."

Across its face was written—"Accepted, Benjamin Bigelow"—and on its back was endorsed, "I transfer the within over to J. H. Price for value received this 12th day of September, 1857.                                    "S. A. WHITE."

The record does not show that any plea was filed. When the order was offered in evidence Dupree's attorneys objected to its introduction, because, as they said, it appeared to have been altered since its execution. The Court overruled the objection, and it was read to the jury.

Plaintiffs' attorneys then offered to read in evidence the answers of the defendant, Sidney A. White, to interrogatories. They were in substance as follows: Knows all the parties, has heard the release, annexed to the interrogatories, read. No alteration was made in said order while he had it; Eddins brought the order to him in Eddins' house, it was for five hundred dollars, and witness supposed it was in Eddins' handwriting. Eddins owed him most of the sum for carpenter's work, building, etc., and the balance was to pay an order given witness by Eddins on Mr. Giles, who did not accept it. Witness did not know how it happened that the words "settle five hundred" are in a different handwriting from the balance of the order, if it is so. "However, it appeared the same, and was in the same handwriting" when he took it, and when he transferred it. Dupree offered to pay the order to witness when he held it, if he would take it in trade, but that did not suit witness. He worked for Eddins off and on four or five years, could not tell how much the work came to, nor the amount paid him at different times, without a calculation which he could not then make.

He knew Eddins owed him as much as $500.00, and did not know and never stated that Eddins did not owe him

more than $50.00, or some other small sum.    The order was given for $500.00, and was not altered by erasure or otherwise while he held it; witness could not see that the paper is thinner under the words "settle five hundred."

*9th Cross-Interrogatory.*    "Are you not now, and have you not been for some time past, in the Penitentiary of Mississippi for negro stealing?    Did you not plead guilty to that charge?"

*Answer.*    "That is a matter which I do not apprehend concerns that business.    I plead guilty of having the negro in my possession, but not of stealing him."

*10th Cross-Interrogatory.*    "Did you not run away from this place (Cedar Town, Georgia,) and carry money with you, leaving your debts unpaid, and your family in a destitute condition?"

*Answer.*    "I decline to answer that interrogatory; it is, however, false."

*11th Cross-Interrogatory.*    "Are you willing now to add to all these crimes that of deliberate perjury?    Do you not know that if Eddins had lived this draft never would have been for $500.00?"

*Answer.*    "That is an impertinent question, and I shall decline to answer it."

These interrogatories were objected to, because it appeared by them that the witness was incompetent by reason of conviction for an infamous offence, and because the 9th, 10th and 11th cross-interrogatories were not fully answered.    The objection was overruled.    The interrogatories were read to the jury.

The plaintiff closed.    Dupree was introduced, and testified that testator died on the 18th of August, 1857, that shortly thereafter, White told him he held a claim on the estate; witness told White that the estate owed him nothing, and would pay him nothing, unless he forced payment by law; in the early part of 1857, White and Eddins swapped horses, and White was to pay Eddins $90.00 to boot, by carpenter's work, and at that time Eddins owed White nothing on any account; White never did the $90.00 worth of work as he

agreed; he was poor, had a large family, and kept pretty nearly even with Eddins for labor done for him. Shortly after said conversation White left that section of the State, and soon after he left, plaintiff presented said order to witness, who told plaintiff the order was not all right; there was some rascality in it, and he would not pay it unless compelled. After the sale of Eddins' perishable property, Price served Dupree with a regular notice of his claim; Dupree repeated, substantially, said objections to it, and said the estate was insolvent and could not pay out. In witness' opinion all of the order except " settle five hundred " was in Eddins' handwriting, and those words were in White's. In 1857, and for some years before, Bigelow was notoriously insolvent. White did carpenter's work for Eddins, off and on, for four or five years, but Dupree never offered to pay the order in trade or otherwise; he always refused to pay it.

JAMES M. WARE testified that in 1857 he, as security for Bigelow, paid off a judgment in favor of Eddins for seven or eight hundred dollars; that about the date of the order, Eddins and White came to Ware's house; Eddins said he had borrowed so much money from Ware that he disliked to call on him again, but that he was hard up for funds, and if Ware would allow him to give White an order on Bigelow for $25.00 (which would answer White's purposes,) he, Eddins, would be glad. Bigelow owing Ware as aforesaid, Ware consented; Eddins wrote an order on Bigelow, in favor of White for $25.00; the paper on which the order sued on is written resembles that used by Eddins at the time witness speaks of; witness has now in his possession a writing made by Eddins at the same time, and he thinks it was written on paper torn from the same sheet as that on which the $25.00 order was written, and which he thinks is the one sued on, but altered since its execution. Bigelow was notoriously insolvent in 1857, and is yet.

PRICE then testified, in rebuttal, that on the 11th or 12th of September, 1857, White came to him to trade the order, that he refused till Bigelow accepted it; he got Bigelow's acceptance and came back that day or next morning, and

Dupree, ex'r, *vs.* Price.

then White shaved it at seventeen per cent. discount, giving White, among other bank-bills, three one hundred dollar Georgia Railroad Bank bills, and settling an account he had against White. He did not remember that Dupree made any objection to the order when he presented it to him.

Here the testimony closed; the Court charged the jury; they retired and found plaintiff the principal and interest and costs of suit.

A motion for new trial, upon the grounds that the Court erred in refusing to reject White's answers to the interrogations, because said 9th, 10th and 11th cross interrogations were not fully answered, and because the verdict was contrary to the evidence, etc., etc., was overruled.

The assignment of errors is the refusal to reject White's answers for want of full answers to the said cross-questions, and because of his infamy, and in overruling the motion for a new trial. (The record is certified by said Bigelow as Clerk.)

CHISOLM, WADDELL, BROYLES, for plaintiff in error.

HARVEY & SCOTT, BUCHANAN, BLANCE & THOMPSON, for defendant in error.

HARRIS, J.

The genuineness of the note sued on, was a question for the jury. The evidence was conflicting, it is true, and there were facts in testimony calculated to impress us with strong suspicions that the note had been altered in the amount; but situated as this case is, it appears to us that it would be violative of well settled principles and duty for us to interfere because of such suspicions.

The Judge before whom the cause was tried, appears to have been satisfied, if not with the correctness, with the legality of the finding, having refused the application for a new trial. We perceive no error of law in such refusal. It was urged before us that unless a new trial was granted here a *personal* liability would be fixed on the executor as the estate represented would prove insolvent. Such a result

will not be the fault of the law, but from not defending in the mode required by law, from the negligence of the executor, in not pleading to the suit on the note at the proper time and in proper form, the condition of the estate.

Why, when sued, did not the executor file his plea of *plene administravit?* Why not the plea of *non est factum?* if he actually believed that the note sued on had been altered materially in amount, so that the *onus* of the proof of the genuineness of the note in its present condition might be cast on the plaintiff below?

The consequences apprehended are the necessary sequences, from such antecedents. The law rightfully assists the vigilant, but looks with no tenderness on the claim for assistance to him who, in the last hour, has become remediless by his own inaction.

Inaction, standing still with folded arms, will be found in general by those who trust to its efficacy, "no antidote for the ills that flesh is heir to."

Judgment affirmed.